## STATE OF NORTH DAKOTA, Respondent, v. JOHN H. CANHAM, Appellant.

(203 N. W. 497.)

**Game — using spaniel dog to retrieve wounded bird within small area from which gamebirds had been flushed no offense.**

Section 27, chapter 224, Session Laws of 1923, is construed and held not to prohibit the use of a spaniel dog to retrieve a wounded or dead bird which had been previously shot and located within a small area from which all gamebirds had been flushed.

Opinion filed December 31, 1924.    Rehearing denied May 2, 1925.

Game, 27 C. J. § 15 p. 952 n. 33 New.   Statutes, 36 Cyc. p. 1148 n. 32; p. 1162 n. 54; p. 1165 n. 85; p. 1183 n. 46.

Appeal from the County Court of Stutsman County, *McFarland,* J. Reversed.

*F. G. Kneeland,* for appellant.

*Geo. F. Shafer,* Attorney General, and *Russell D. Chase,* State's Attorney, for respondent.

BIRDZELL, J. This is an appeal from a judgment of conviction and from an order denying a new trial. The information charges the defendant with unlawfully running a dog known as a bird dog in fields and upon land in which game birds might be found between April 1st and November 1st in violation of law. The principal question involved upon this appeal is the sufficiency of the evidence to sustain the conviction. It appears that on the first day of the hunting season in 1923 the defendant and three others were hunting. The defendant had with him an Irish water spaniel dog. As the defendant and his companions were driving along in automobiles they saw some prairie chickens cross the trail ahead of them. They stopped and shot four of the birds, one dropping in a small patch of buck brush about fifty feet from the road. Three of the birds were readily recovered, but on walking through the buck brush they were unable to locate the one that had dropped there, whereupon the defendant went to the car, unloosened the dog and took him to the buck brush in an unsuccessful effort to find the dead or wounded bird. The movements of the defendant and his companions were observed, at least in part, by one Brown, a game warden, who was some distance away and who was the state's witness upon the trial. Under the evidence this case turns upon the interpretation of § 27, chapter 224 of the Laws of 1923, which is as follows:

"Sec. 27. No person shall hunt, pursue, catch, take or kill deer, antelope, moose or elk with any dog or dogs. No person shall train or run any dog or dogs owned or controlled by them known as "bird dogs" including pointers, setters, or droppers, or allow same to run loose in fields or upon land in which game birds may be found, or are apt to be frequented by game birds between the first day of April and the first day of November (both inclusive) following of each year.

"Provided, however, that this section shall not be construed as prohibiting the use of dogs for retrieving water birds, including any or all of the several species of ducks and geese which it is lawful to hunt and kill."

It is the contention of the appellant that an Irish water spaniel dog is not a "bird dog" within the meaning of this statute and that his acts do not amount to allowing a dog "known as a bird dog" to run loose upon land in the manner prohibited by the statute. On the other hand, it is the contention of the state that many dogs are known as

bird dogs though they may not be so classified in a general way. That is, the shepherd dog, collie or bulldog might be so trained that if allowed to run in the fields where birds may be found he could locate them by the scent and facilitate the operations of hunters. It is urged that the statute is designed to prohibit the use of any such dog for such purpose and to prohibit allowing them to run at large in a field regardless of whether or not they may be classified as pointers, setters or droppers or as possessing other characteristics.

In determining the meaning of this statute, resort may properly be had to its origin. We find that in 1915 a statute very similar to this was enacted which prohibited the running of dogs in fields where game birds might be found between the first day of April and the first day of August. This statute was clearly designed to prevent the running of dogs in what are generally known as field trials prior to the opening of the hunting season. It contained no proviso permitting the use of dogs for retrieving water birds for the obvious reason that it did not purport to prohibit any use of dogs during the hunting season. However, the prohibitory sentence in the statute, applicable to "bird dogs," was the same (aside from the season) as is contained in § 27 of the Act of 1923, except that the enumeration following the phrase "known as 'bird dogs' " was worded "including pointers, setters, droppers or spaniels." Laws 1915, chap. 161, § 27. In 1919 this statute was amended by omitting the words "or spaniels," and extending the prohibited season so as to include the hunting season by changing the word August to November. Laws 1919, chap. 134, § 2. In 1923 the section was again amended by adding the proviso which expressly permitted the use of dogs for retrieving water birds which it was lawful to hunt and kill.

There can be no doubt that when the statute was originally enacted in 1915 a spaniel was intended to be included in the term "bird dog."

This was made clear by the legislative enumeration "including pointers, setters, droppers or spaniels." When, however, in 1919 the legislature dropped from this enumeration the words "or spaniels" it ceased to include them by express specific classification and included them only, if at all, under the general designation of dogs "known as 'bird dogs.' " The question is a narrow one. It is altogether one of legislative intention. In our opinion, in view of the legislative history above referred to, there is great doubt that the legislature intended to

include spaniels, regardless of their use and training, in the designation "known as 'bird dogs.'" There may be room for considerable diversity of opinion as to whether a spaniel is a bird dog or is known as a bird dog. The present record shows it. Hence, the propriety of including spaniels in the designation by express words in the statute of 1915, when it was desired to prohibit the same from running loose in fields prior to the hunting season. There could be little doubt, however, that pointers, setters and droppers are known as bird dogs. When, therefore, the legislature so amended this statute as to drop from the enumeration the only class of dogs previously included by express terms concerning whose classification there might be substantial doubt and retained in the enumeration those concerning whose classification there would be little or no doubt, we think such action consistent with a purpose to exclude spaniels from the general class of dogs known as "bird dogs." We do not, of course, hold that the use of spaniels in connection with hunting for other than retrieving purposes might not bring them within the prohibited class. In other words, we do not hold that pointers, setters and droppers are the only dogs that may be known or become known as "bird dogs," and neither do we hold that spaniels when trained and used to locate or flush game birds might not, by virtue of that fact, come within the prohibition of the statute.

Under the evidence in this case the dog was not used at all until the birds had been flushed and the hunters had looked over the limited area for the wounded or dead bird, and the use of the dog was confined to this area. We think the statute is not reasonably susceptible of a construction that prohibits such a use of a dog possessing the instincts and training of the dog in question.

To the argument that the prohibition of this statute must be broadly construed to prevent the use of dogs in connection with hunting, since otherwise it would be impossible to secure convictions of violators, it need only be said that, if it were the legislative intention to prevent any use of dogs in connection with the hunting of land birds, this intention might readily find expression in a statute prohibiting any hunter from loosening a dog of any description in a field where land game birds were apt to be found. This is not such a statute. The statute before us, being penal, should not be extended beyond the apparent legislative intention.

It must be conceded that the proviso which permits the use of dogs for retrieving water birds furnishes substantial foundation for an implication that they were not to be used for retrieving other game birds. But, as the prohibitory language of the statute does not, in our opinion, extend to the acts proved in the instant case, it can not be fairly extended by implication.

The judgment appealed from is reversed.

BRONSON, Ch. J., and JOHNSON, J., concur.

NUESSLE, J., dissents.

CHRISTIANSON, J. I have some doubt as to whether the construction placed upon § 27, chapter 224, Laws 1923 in the opinion prepared by Mr. Justice Birdzell is in accord with and gives effect to the intention of the legislature. I am rather inclined to the view that it does not. However, no particular harm can come from that construction, as the legislative assembly will have ample opportunity to deal with the matter before the next hunting season.